IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KIEONA MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-893 |
| | ) | |
| PINE RIDGE HEALTH & REHAB CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

*******************************

| | | |
|---|---|---|
| KIEONA MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-894 |
| | ) | |
| MAPLE GROVE HEALTH & REHABILITATION CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is Defendants' Pine Ridge Health & Rehab Center ("Pine Ridge") and Maple Grove Health & Rehabilitation Center ("Maple Grove") (collectively, "Defendants") Motion for Summary Judgment. (Doc. 43.)[1] These cases were joined for the

[1] All citations in this Memorandum Opinion and Order to documents filed with this court refer to documents filed in Case No. 1:24-cv-893 unless otherwise specified.

purposes of summary judgment. (See Text Order 10/30/2025.) For the reasons stated herein, Defendants' motion will be granted.

## I. BACKGROUND

Pine Ridge and Maple Grove are skilled nursing facilities that provide short-term, long-term, and memory care for their patients. (Doc. 44-1 at 2; Doc. 44-2 at 2.)[2] Both facilities posted job openings for a Certified Nursing Assistant ("CNA") position, and Maple Grove also posted a Medication Aide position. (Doc. 47-1 at 1; Doc. 47-17 at 1–2; see Doc. 44-8 at 1.) The CNA position at both facilities, categorized as "Nursing Assistant I," required that applicants be able to "lift residents, medical equipment, [and] supplies . . . ." (Doc. 44-7 at 5; Doc. 44-11 at 5.) The working conditions included "[s]itting, standing, bending, lifting, and moving intermittently during work hours." (Doc. 44-7 at 3; Doc. 44-11 at 3.) And the job duties and responsibilities included bathing and dressing residents, assisting residents to and from the restroom, transporting residents for various activities, moving and turning bed-bound residents, assisting residents' movements around their rooms and the facilities, and "[a]ssist[ing] others

[2] All citations in this Memorandum Opinion and Order to documents filed with this court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

in heavy lifting." (Doc. 44-7 at 2–3; Doc. 44-11 at 2–3.) The Medication Aide job description listed similar qualifications, working conditions, and job responsibilities, including the requirement that applicants be able to "lift residents, medical equipment, [and] supplies . . . ." (Doc. 44-8 at 1–5.)

Plaintiff Kieona Juanita Areal Manning ("Plaintiff") applied for CNA positions at both facilities and the Medication Aide position at Maple Grove. (See Doc. 44-10 at 6; Doc. 44-3 at 40–42.) Plaintiff is a licensed CNA with prior experience working in skilled nursing facilities. (Doc. 44-4 at 1–2; Doc. 44-3 at 5–13.) During the application and interview process at both Pine Ridge and Maple Grove, Plaintiff disclosed results of a Functional Capacity Evaluation ("FCE"), (Doc. 44-6 at 3), conducted by a physician in the aftermath of an injury she experienced while lifting patients as a hospice aide, (Doc. 44-3 at 12–15, 20–21, 43–44; Doc. 44-10 at 7–10). The FCE documented a twenty-five (25) pound leg lift capability, a thirty-five (35) pound two-hand carry capability, and a forty (40) pound push/pull capability. (Doc. 44-6 at 3.) After Plaintiff's FCE disclosure, both Pine Ridge and Maple Grove informed her that they could not hire her due to her physical restrictions. (Doc. 44-3 at 46; Doc. 44-10 at 17.)

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") against Pine Ridge and Maple Grove, alleging disability discrimination under the Americans with Disabilities Act ("ADA"). (See Doc. 47-10 at 1–4.) Plaintiff, proceeding pro se, then filed the underlying complaints against Pine Ridge and Maple Grove, alleging that the facilities discriminated against her based on her disability in failing to hire her, in violation of Title I of the ADA.[3] (No. 1:24-cv-893, Doc. 4 at 1–4; No. 1:24-cv-894, Doc. 4 at 1–4.) Pine Ridge and Maple Grove answered Plaintiff's complaints, denied the allegations, and raised several defenses. (See No. 1:24-cv-893, Doc. 13 at 1–5; No. 1:24-cv-894, Doc. 13 at 1–5.) Another court in this district granted, in part, Defendants' motion to consolidate and joined the cases against Pine Ridge and Maple Grove for the purposes of summary judgment. (Text Order 10/30/25.) And after the close of discovery, Defendants moved for summary judgment. (Doc. 43.) Plaintiff responded in opposition, (Doc. 47), and Defendants replied in support, (Doc. 48).

[3] Plaintiff's complaints also appear to allege a claim for failure to accommodate, but in response to Defendants' motion for summary judgment Plaintiff clarifies that she "does not assert a failure to accommodate[e] claim." (Doc. 47 at 11.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . . , the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718–19 (4th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Summary judgment should be granted "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." Id. at 719 (citing Liberty Lobby, 477 U.S. at 247–48).

## III. ANALYSIS

### A. Failure to Hire

Plaintiff alleges that Pine Ridge and Maple Grove denied her a position as a CNA due to her disability in violation of

the ADA. (No. 1:24-cv-893, Doc. 4 at 1–4; No. 1:24-cv-894, Doc. 4 at 1-4.) In their motion for summary judgment on this claim, Pine Ridge and Maple Grove argue that Plaintiff cannot perform the essential functions of the positions she applied for and that no reasonable accommodations exist for Plaintiff's restrictions. (Doc. 44 at 11, 14–19.) As such, Defendants argue Plaintiff cannot establish a prima facia case of disability discrimination because she is not a "qualified individual with a disability" under the ADA. (Id. at 11.)

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures," and "the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Failure-to-hire claims under the ADA are evaluated under a modified version of the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework. Hurd v. Cardinal Logistics Mgmt. Corp., No. 17-CV-00319, 2018 WL 4604558, at *4 (W.D. Va. Sept. 25, 2018); Allen v. Johnson, No. 09-1503, 2010 WL 2431022, at *3 (D. Md. June 10, 2010). Under the modified version of the

McDonnell Douglas framework, a plaintiff must first make a prima facie showing of discrimination by showing that she (1) is disabled within the meaning of the ADA; (2) applied for the vacant position; (3) was qualified for the position; and (4) was rejected for the position under circumstance giving rise to an inference of unlawful discrimination. Ihekwu v. City of Durham, 129 F. Supp. 2d 870, 878 (M.D.N.C. 2000); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

If a plaintiff establishes a prima facie case under this modified version of McDonnell Douglas, the burden of persuasion then shifts to the defendant to rebut the presumption of discrimination by producing evidence that Plaintiff was not hired for "a legitimate, nondiscriminatory reason." Lane v. Wal-Mart Stores, Inc., No. CIV 99-763, 2000 WL 1481638, at *3 (D. Md. 2000) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)); see also Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003). "The defendant's burden is one of production and not of persuasion . . . ." Id. (citing Reeves, 530 U.S. at 142). If the defendant meets its burden, "the presumption raised by the prima facie case 'drops out of the picture,' and the plaintiff bears the ultimate burden of proving that they have been the victim of intentional discrimination."

Ennis v. National Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, (1993); overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 169-70 (2009)).

**1. Qualified Individual**

In response to Defendants' argument that she is not a qualified individual due to her physical limitations, Plaintiff argues that Defendants' description of the essential functions of the CNA and Medication Aide positions are "lies" and that Defendants failed to consider whether reasonable accommodations were possible. (E.g., Doc. 47 at 3, 6, 12.)

As stated above, "[u]nder the ADA, only individuals who are qualified for the job they seek may state a claim for discrimination." Lamb v. Qualex, Inc., 33 F. App'x 49, 56 (4th Cir. 2002). To determine whether a person is a qualified individual, a court must consider whether that person is (1) able to perform the essential functions of the job in question, and if not, (2) whether the person could perform the job with reasonable accommodation. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993)). And "Plaintiff bears the burden of demonstrating that she could perform the

essential functions of her job with reasonable accommodation." Id.

**i. Essential Functions**

Defendants argue that "lift[ing] patients, maneuver[ing] them into wheelchairs, and assist[ing] them with bathing, dressing, using the restroom, and mobility" are essential functions of the CNA and Medication Aide positions that must be performed daily. (Doc. 44 at 13–14.) And they further argue that to achieve these functions, CNAs and Medication Aides "are required to be able to lift, push, and pull a patient's entire weight, which is virtually always over 40 pounds and typically over 100 pounds." (Id. at 14.) Plaintiff responds by questioning whether lifting heavy weights is an essential function of the positions. (E.g., Doc. 47 at 12 ("If the CNA position relies on the employee's ability to lift heavy objects than [sic] why is it not taught during the 120 hours of training or included in the skilled test required by the state?").)

"A function is essential as long as it 'bears more than a marginal relationship to the job at issue.'" Elledge v. Lowe's Home Ctrs., LLC, 979 F.3d 1004, 1009 (4th Cir. 2020) (quoting Rohan v. Networks Presentations LLC, 375 F.3d 266, 279 (4th Cir. 2004)). And the ADA states that in determining a position's essential functions, "consideration shall be given to the

employer's judgment." 42 U.S.C. § 12111(8). As such, "the decision about a position's essential functions belongs, in the first instance, to the employer," and an employer's judgment on the issue "merits 'considerable deference' from the courts." Elledge, 979 F.3d at 1009 (quoting D'Amico v. City of New York, 132 F.3d 145, 152 (2d Cir. 1998)). The written job description is "relevant to the employer's judgment" but is not dispositive. Id. (citing 42 U.S.C. § 12111(8)). A court therefore "must consult the full range of evidence bearing on the employer's judgment, including the testimony of senior officials and those familiar with the daily requirements of the job." Id.

Relevant evidence that a function is essential includes, but is not limited to:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

E.E.O.C. v. Dollar Gen. Corp., 252 F. Supp. 2d 277, 285 (M.D.N.C. 2003) (quoting 29 C.F.R. § 1630.2(n)(3)). Courts do not look to "the employee's particular experience," and "[t]hat an employee may typically be assigned to only certain tasks of a multifaceted job 'does not necessarily mean that those tasks to

which she was not assigned are not essential.'" E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP, 616 F. App'x 588, 594 (4th Cir. 2015) (quoting Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001)).

Here, the record demonstrates that lifting, carrying, pushing, and pulling weights greater than 40 pounds are essential functions the roles of a CNA and Medication Aide. First, Pine Ridge and Maple Grove provided sworn affidavits of employees responsible for hiring and supervising CNAs and Medication Aides. Maple Grove's Director of Nursing stated that CNAs and Medications Aides are responsible for the "transfer of patients to and from bed, wheelchairs, and showers or baths," which requires they "be capable of handling a resident's entire weight."[4] (Doc. 44-1 at 2.) The Director also stated that "[p]atients generally weigh over 100 pounds, and virtually all patients weigh over 40 pounds." (Id.) Defendants' Chief Human Resources Officer stated that these types of tasks are "performed daily in the position[s]" of CNA and Medication Aide. (Doc. 44-2 at 2; see also Doc. 44-1 at 2.)

---

[4] In her response to Defendants' motion for summary judgment, Plaintiff contests this declaration as "speculative" and "based on guesswork." (Doc. 47 at 10.) Plaintiff's allegations are conclusory, unsupported by evidence, and contrary to the declarant's sworn statement that she is responsible for supervising CNAs and Medication Aides. (See Doc. 44-1 at 2.)

Second, the record includes detailed job descriptions for the CNA and Medication Aide positions to which Plaintiff applied. These descriptions are consistent with the affidavits discussed above and require CNAs and Medication Aides to be able to "lift residents, medical equipment, [and] supplies." (Doc. 44-7 at 5; Doc. 44-8 at 5.) The working conditions involve "[s]itting, standing, bending, lifting, and moving intermittently during work hours." (Doc. 44-7 at 3; Doc. 44-7 at 4.) And the job duties and responsibilities include bathing and dressing residents, assisting residents to and from the restroom, transporting residents for various activities, moving and turning bed-bound residents, assisting residents' movements around their rooms and the facilities, and "assist[ing] others in heavy lifting." (Doc. 44-7 at 2–3; Doc. 44-8 at 2–3.)

Third, Plaintiff's deposition testimony confirms that heavy lifting, carrying, pushing, and pulling are essential functions of the CNA and Medication Aide positions. Plaintiff acknowledged that in prior CNA positions she helped patients get out of bed, into wheelchairs, and into the bath. (Doc. 44-3 at 9, 22.) Indeed, Plaintiff stated that her underlying injury was caused by "[m]oving patients," and specifically moving a patient "from his wheelchair to the toilet." (Id. at 12, 15.) And when asked whether lifting, pushing, and pulling were part of the duties

she performed in a prior CNA role, Plaintiff replied in the affirmative. (Id. at 19.) At other points in the deposition Plaintiff gave inconsistent answers, insisting that she had not, to her recollection, had to lift a patient. (Id. at 22.) But she nevertheless recognized that the job description for her prior CNA role included "lifting up to 100 pounds." (Id. at 21-22; cf. Doc. 47-21 at 6.)

Plaintiff's attempts to contradict the evidence in the record concerning the essential functions of the CNA and Medical Aide roles at Pine Ridge and Maple Grove are unavailing. Defendants have supplemented their written job descriptions with statements from senior officials at the facilities who confirmed that lifting, carrying, pushing, and pulling weights greater than 40 pounds are daily requirements for both positions. See Elledge, 979 F.3d at 1009. Plaintiff offers no evidence to the contrary, other than her personal experience in similar roles, which is not part of this court's essential function analysis. See Womble Carlyle, 616 Fed. App'x at 594. And, in any event, "[a] plaintiff cannot create a genuine dispute of material fact by contradicting [her] own statements." Keith v. Volvo Grp. N. Am., LLC, No. 23-1178, 2024 WL 1193096, at * (4th Cir. Mar. 20, 2024) (citing Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010)). Affording considerable deference to Pine Ridge and

Maple Grove's judgment and written job descriptions, in the absence of evidence to the contrary, this court determines that lifting, carrying, pushing, and pulling weights greater than 40 pounds are essential functions of the CNA and Medication Aide positions to which Plaintiff applied.

### ii. **Reasonable Accommodation**

Having determined that lifting, carrying, pushing, and pulling weights heavier than 40 pounds are essential functions of the positions Plaintiff applied to, this court must next determine whether Plaintiff could perform these essential functions with reasonable accommodations. Defendants argue that Plaintiff did not request accommodations, (Doc. 44 at 16), and that even if she had, no reasonable accommodations existed because her suggestions would eliminate essential functions of the jobs or shift her responsibilities to other employees, (id. at 18). Plaintiff responds that Defendants failed to engage in the necessary "interactive process" to determine whether accommodations such as "reassignment of lifting task[s], . . . use of assistive devices[,] or team lifting," were possible. (Doc. 47 at 3.)

"A reasonable accommodation is one that 'enable[s] [a qualified] individual with a disability . . . to perform the essential functions of [a] position.'" Jacobs v. N.C. Admin.

Off. of the Cts., 780 F.3d 562, 580 (4th Cir. 2015) (quoting 29 C.F.R. § 1630(o)(1)(ii)). "The ADA requires a reasonable accommodation be made for a known physical or mental limitation of a qualified disabled individual unless the accommodation would impose an undue hardship on the operation of the business." Dollar Gen. Corp., 252 F. Supp. 2d at 289 (citing 42 U.S.C. § 12112(b)(5)(A)).

But "[a]n employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform all of the essential functions of her position." Jacobs, 780 F.3d at 581 (emphasis in original). And "an accommodation that would require other employees to work harder is unreasonable." Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 Fed. App'x 314, 323 (4th Cir. 2011) (stating that an accommodation that would shift an employee's duties to other employees in her department was unreasonable) (internal quotation marks omitted). The Plaintiff bears the burden of both identifying an accommodation and demonstrating that the accommodation is reasonable. Lamb, 33 Fed. App'x at 59 (citing Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997), abrogated on other grounds by Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999)).

Here, Plaintiff's suggested reasonable accommodations would place an undue hardship on Pine Ridge and Maple Grove by requiring other employees to take on Plaintiff's responsibilities. Plaintiff admitted that the restrictions in the FCE she submitted to Pine Ridge and Maple Grove would prevent her from carrying out the essential functions of the CNA and Medication Aide positions. (Doc. 44-3 at 37–41, 56; see also 44-10 at 19–21, 23–24.) To accommodate her restrictions, Plaintiff identified several modifications to the CNA duties. First, she suggested that "instead of giving [her] [a resident] for total care," Defendants could "either have someone in the room with [her] to do what's needed or give that [resident] to someone else." (Doc. 44-3 at 35.) Second, she stated that the facilities could assign her a "minimal assistance floor[ ]" where residents need less support. (Id. at 36.) Third, Plaintiff claimed that "[j]ust because [she] . . . had a restriction on [her] doesn't mean that [she] can't" push a resident weighing more than 40 pounds in a wheelchair. (Id.; see also Doc. 44-10 at 20–21.)

In her response in opposition to Defendant's motion for summary judgment, Plaintiff continues to make similar arguments regarding reasonable accommodations. She appears to suggest that a second staff member could assist her in carrying out her

duties, (Doc. 47 at 7), and that Defendants could "reassign[ ] lifting task[s]" or "explore use of assistive devises or team lifting," (id. at 3). But Plaintiff's primary contention is that Defendants failed to engage in "an interactive process to determine whether a reasonable accommodation was possible." (Id. at 3, 5, 7–8.) She maintains this argument despite her earlier admissions that she did not request an accommodation from Defendants or seek an updated FCE. (Doc. 44-10 at 17–18; Doc. 44-3 at 27–28, 47, 54.)

Contrary to Plaintiff's arguments, "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." Crabill, 423 Fed. App'x at 323 (citing Rehling v. City of Chicago, 207 F.3d 1009, 1016 (7th Cir. 2000)); see also Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346–47 (4th Cir. 2013). Instead, Plaintiff "must demonstrate that the employer's failure to engage in the interactive process resulted in a failure to identify an appropriate accommodation . . . ." Crabill, 423 Fed. App'x at 323 (citing Rehling, 207 F.3d at 1016). Here, Plaintiff has failed to make such a showing because "the ADA does not require," as Plaintiff's identified accommodations would, "an employer to reallocate essential job functions or assign an employee permanent light duty." Id. (internal quotation marks

omitted); see also Carter v. Tisch, 822 F.2d 465, 467 (4th Cir. 1987). By Plaintiff's own account, her suggested reasonable accommodation would be for Defendants to assign her to a lighter duty floor. (See Doc. 44-3 at 35–36.)

Furthermore, "an accommodation that would require other employees to work harder is unreasonable." Crabill, 423 Fed. App'x at 323 (internal quotation marks omitted); Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114, 1121 n.3 (10th Cir. 2004); see also 29 C.F.R. § 1630.2(p)(2)(v) (stating that factors to consider include "[t]he impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business"). According to affidavits from senior officials at Pine Ridge and Maple Grove, it is "not possible for CNAs to avoid certain patients" because "patients with differing needs are grouped together on each hallway in the facility." (Doc. 44-1 at 2.) And a nursing assistant who cannot lift a patient "will not be able to assist with essential care tasks, which could severely degrade patient care and lead to negative or catastrophic outcomes" and even "require overstaffing [the] facilities." (Doc. 44-2 at 2.)

Plaintiff offers no evidence that creates a genuine dispute of material fact regarding the reasonableness of her proposed

accommodations. Her suggestions regarding reassignment to different floors or patients have the effect of "[e]xcusing [her] from all heavy lifting" and thus "would not have been a reasonable accommodation." Womble Carlyle, 616 F. App'x at 595; see Doc. 44-3 at 35–36 (suggesting that Defendants reassign patients requiring "total care" to "someone else"). And in any event, this reassignment suggestion does not appear to be possible, as "patients with differing needs are grouped together on each hallway in the facility." (Doc. 44-1 at 2.)

Plaintiff's alternate suggestion that she could instead lift weights in excess of her stated restrictions is another attempt to "create a genuine dispute of material fact by contradicting [her] own statements" that the restrictions documented in her FCE were valid and did not have an expiration date. Keith, 2024 WL 1193096, at *2; Doc. 44-3 at 27, 29. Plaintiff has therefore failed to carry her burden of identifying a reasonable accommodation that would allow her to perform the essential functions of the CNA and Medication Aide positions. See Wulff v. Sentara Healthcare, Inc., 513 Fed. App'x 267, 271–72 (4th Cir. 2013) (finding the plaintiff's "attempts to discredit the form that her physician's assistant completed (and thus [the defendant's] reliance on the form in its decision to remove [the plaintiff] from the work schedule) . . .

unavailing" and that the plaintiff therefore "failed to generate a genuine dispute of material fact critical to her ability to support her prima facie case").

Because this court has determined there are no genuine disputes of material fact regarding the essential functions of the CNA and Medication Aide positions to which Plaintiff applied or the reasonableness of Plaintiff's proposed accommodations, this court concludes that Plaintiff is not qualified individual under the ADA. As such, Plaintiff has failed to establish a prima facie failure-to-hire case. This court will therefore grant Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice. The pending motions filed in No. 1:24-cv-893 seeking to continue trial, (Doc. 50), and exclude witnesses, (Doc. 56), will be denied as moot. As will the pending motions filed in No. 1:24-cv-894 to continue trial, (Doc. 50), and exclude witnesses, (Docs. 56, 57).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (Doc. 43), in each of these cases is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that in Case No. 1:24-cv-893, Defendant's Motion to Continue Trial, (Doc. 50), and Plaintiff's Motion to Exclude, (Doc. 56), are **DENIED** as **MOOT.**

**IT IS FURTHER ORDERED** that in Case No. 1:24-cv-894, Defendant's Motion to Continue Trial, (Doc. 50), Plaintiff's Motion to Exclude, (Doc. 56), and Plaintiff's Motion in Limine, (Doc. 57), are **DENIED** as **MOOT.**

A judgment dismissing this action will be entered contemporaneously herewith.

This the 30th day of September, 2026.

William L. Osteen, Jr.
United States District Judge